**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE SANBORN LIBRARY LLC, | Case No. 1:19-cv-02049-JHR-OTW |
| Plaintiff and Counterclaim-Defendant, and | |
| ENVIRONMENTAL DATA RESOURCES, LLC, | ***ORAL ARGUMENT REQUESTED*** |
| Counterclaim-Defendant | |
| v. | |
| ERIS INFORMATION INC., ERIS INFORMATION LIMITED PARTNERSHIP, AND ECO LOG ENVIRONMENTAL RISK INFORMATION SERVICES LTD., | |
| Defendants and Counterclaim Plaintiffs. | |

**SANBORN'S OBJECTIONS TO REPORT & RECOMMENDATION**

**TABLE OF CONTENTS**

THE CONTEXT FOR SANBORN'S OBJECTIONS ...................................................................... 3

THE REPORT & RECOMMENDATION ERRED IN DISMISSING SANBORN'S COMPLAINT ON EQUITABLE-ESTOPPEL GROUNDS ............................................... 6

I.      THERE ARE TRIABLE ISSUES ON EQUITABLE ESTOPPEL ................................... 8

        A.      Whether ERIS Was Ignorant of the True Facts Is a Triable Issue ........................ 8

        B.      Whether Sanborn Misled ERIS Is a Triable Issue. ................................................ 12

        C.      ERIS's Justifiable Reliance Is a Triable Issue. .................................................... 19

        D.      The Recommendation's Failure To Consider the Equities Precludes Summary Judgment for ERIS. ................................................................................. 21

II.     DISMISSAL OF THE DMCA CLAIM WAS UNWARRANTED ................................. 24

THE COURT CAN ADDRESS REMAINING ISSUES AT TRIAL ......................................... 24

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 1993 WL 379548 (N.D. Cal. Sept. 13, 1993) ................................................................................................................21

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) ................ *passim*

*ABKCO Music, Inc. v. Sagan*, 50 F.4th 309 (2d Cir. 2022), *cert. denied*, 144 S. Ct. 77 (2023) ................................................................................................................6, 19

*Adventure Products, Inc. v. Simply Smashing, Inc.*, 2007 WL 2775128 (S.D. Cal. Sep. 20, 2007) ..................................................................................................................19

*Ambac Assurance Corp. v. U.S. Bank National Association*, 632 F. Supp. 3d 517 (S.D.N.Y. 2022) ............................................................................................................6

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 2008 WL 5049744 (S.D.N.Y. Nov. 26, 2008) ...........................................................................................................12, 15, 21

*B. Braun Medical, Inc. v. Abbott Laboratories*, 124 F.3d 1419 (Fed. Cir. 1997) .........................17

*CAO Lighting, Inc. v. Feit Electric Co.*, 2020 WL 7786580 (C.D. Cal. Oct. 22, 2020)....15, 23, 24

*Cedarapids, Inc. v. CMI Corp.*, 2000 WL 34030837 (N.D. Iowa Nov. 2, 2000) .........................14

*Columbia Broadcasting System, Inc. v. Stokely-Van Camp, Inc.*, 522 F.2d 369 (2d Cir. 1975).................................................................................................................18

*Cooley v. Penguin Group (USA), Inc.*, 31 F. Supp. 3d 599 (S.D.N.Y. 2014)  .............................. 9

*Dallal v. The New York Times Co.*, 2006 WL 463386 (2d Cir. Feb. 17, 2006)....................7, 9, 21

*DeCarlo v. Archie Comic Publications, Inc.*, 127 F. Supp. 2d 497 (S.D.N.Y. 2001) ..................16

*Design Options, Inc. v. BellePointe, Inc.* 940 F. Supp. 86 (S.D.N.Y. 1996) ................................25

*Dunlop-McCullen v. Pascarella*, 2002 WL 31521012 (S.D.N.Y. Nov. 13, 2002).........................7

*Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358 (Fed. Cir. 2001)................................................21

*Energy Intelligence Grp., Inc. v. United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO/CLC*, 2013 WL 4648333 (W.D. Pa. Aug. 29, 2013) ...........................................................9

*Ferring B.V. v. Allergan, Inc.*, 980 F.3d 841 (Fed. Cir. 2020) ...............................................19, 21

*Fitzpatrick v. Sony–BMG Music Entertainment, Inc.*, 2008 WL 84541 (S.D.N.Y. Jan. 8, 2008) ...................................................................................................................................6

*Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.*, 716 F.3d 302 (2d Cir. 2013) ..........7

*Gasser Chair Co. v. Infanti Chair Manufacturing Corp.*, 60 F.3d 770 (Fed. Cir. 1995) ...........................................................................................................7, 19, 20, 21

*Grimaldi v. Promuto*, 2014 WL 12657039 (S.D.N.Y. Oct. 17, 2014).........................................25

*Hall v. Aqua Queen Manufacturing, Inc.*, 93 F.3d 1548 (Fed. Cir. 1996)...................................21

*Hampton v. Paramount Pictures Corp.*, 279 F.2d 100 (9th Cir. 1960) .........................................8

*Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290 (Fed. Cir. 1992).....................15, 20

*Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570 (Fed. Cir. 1987)...................................................15

*Island Software & Computer Service, Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005).......22

*Kendall v. Cuomo*, 2017 WL 4162338 (S.D.N.Y. Sept. 19, 2017)...............................................25

*Kewazinga Corp. v. Microsoft Corp.*, 558 F. Supp. 3d 90 (S.D.N.Y. 2021) ..........................16, 18

*Keyfer & Associates Inc. v. Brock*, 2010 WL 11505875 (N.D. Ga. Mar. 30, 2010) .................8, 9

*Lautzenhiser Technologies, LLC v. Sunrise Medical HHG, Inc.*, 752 F. Supp. 2d 988 (S.D. Ind. 2010) ...........................................................................................................23

*LEGO A/S v. Best-Lock Construction Toys, Inc.*, 404 F. Supp. 3d 583 (D. Conn. 2019) .............................................................................................................8, 9, 10, 11

*Lombardi v. Whitehall XII/Hubert Street, LLC*, 2010 WL 742615 (S.D.N.Y. Mar. 3, 2010) ...................................................................................................................................6

*Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737 (D. Md. 2003)...........................8

*Marsh v. City of New York*, 2022 WL 3576712 (E.D.N.Y. Aug. 19, 2022) .................................25

*Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459 (Fed. Cir. 1990).......................................................19

*Nabisco v. Warner–Lambert Co.*, 32 F.Supp.2d 690, 694–95 (S.D.N.Y. 1999).........................25

*Oppenheimer v. Scarafile*, 2022 WL 2704875 (D.S.C. July 12, 2022) .........................................9

*Pavlica v. Behr*, 397 F. Supp. 2d 519 (S.D.N.Y. 2005)..............................................................8, 9

*Rand McNally & Co. v. Fleet Management Systems, Inc.*, 600 F. Supp. 933 (N.D. Ill. 1984) ...................................................................................................................................8

*Telebrands Corp. v. HM Import USA Corp.*, 2012 WL 3930405 (E.D.N.Y. July 26, 2012) ........22

*ThermoLife International, LLC v. Myogenix Corp.*, 2016 WL 4095967 (S.D. Cal. June 28, 2016) ...............................................................................................................14

*Vornado Realty Trust v. Marubeni Sustainable Energy, Inc.*, 987 F. Supp. 2d 267 (E.D.N.Y. 2013)................................................................................................25

*Wafer Shave, Inc. v. Gillette Co.*, 857 F. Supp. 112 (D. Mass. 1993) ...........................................15

*Ward v. National Geographic Society*, 208 F. Supp. 2d 429 (S.D.N.Y. 2002) ............................24

*Zuma Press, Inc. v. Getty Images (US), Inc.*, 2019 WL 316001 (S.D.N.Y. Jan. 24, 2019).............7

## STATUTES

17 U.S.C. § 202..............................................................................................................................25

## REGULATIONS

Federal Rule of Civil Procedure 72 .................................................................................................3

This action seeks to hold ERIS liable for its systematic copying of Sanborn's copyrighted fire-insurance maps.[1]  At issue are 6,120 registered works, comprising over 150,000 individual maps.  There is no dispute ERIS reproduced *verbatim* Sanborn's copyrighted maps in the products it sells.  And, more than that, in many cases ERIS repackaged the maps as its own, erasing Sanborn's copyright information and falsifying its own ownership terms on the maps.  ERIS did this for years knowing it faced potential copyright litigation from Sanborn—but hoping it could forestall suit:  "[W]e weighed the risk and decided we had enough going for us to make it difficult" for Sanborn to sue, "[s]o we went ahead."[2]  ERIS's infringement has ratcheted up—not down—since Sanborn filed this now-five-year-old action asserting copyright and Digital Millennium Copyright Act (DMCA) claims.

ERIS repeatedly acknowledged Sanborn's maps were copyrighted, knew it had risk of being sued by Sanborn for copyright infringement by commercially using Sanborn's maps, but nevertheless chose to reproduce them for purposes of selling them to its customers; took active steps to hide its infringing behavior, including by surreptitiously collecting Sanborn's maps; benefitted commercially from its misconduct; and caused tens, if not hundreds, of millions of dollars in harm to Sanborn.  Judge Wang nevertheless recommended that Sanborn be equitably estopped from pursuing its claims because it assertedly misled ERIS into believing it would not sue, having notified ERIS to respect Sanborn's copyrights in a November 2013 letter and then not filing suit until 2019.  Yet the record is devoid of any contemporaneous evidence that ERIS believed

---

[1] "ERIS" refers to defendants ERIS Information Inc., Eco Log Environmental Risk Information Services, Ltd., and ERIS Information Limited Partnership.  "Sanborn" refers to the parties on the other side of the "v.":  The Sanborn Library LLC and Environmental Data Resources, LLC.

[2] Sanborn Stmt. of Facts (June 9, 2023) [ECF 255], ¶ 233.  Citations to a party's statement of facts may include as well citation to documents referenced in that paragraph.

Sanborn's letter, or any subsequent conduct by Sanborn, meant Sanborn would not sue.  The record, however, is filled with evidence showing the opposite:  ERIS knew its conduct created litigation risk and made a calculated decision to accept that risk.  Had ERIS believed Sanborn would not sue, it would not have worked so hard to hide its tracks; its contemporaneous behavior belies its made-for-litigation estoppel defense.  And if Sanborn's conduct truly is what drove ERIS's decision to infringe—as its estoppel defense presumes—then ERIS would not have continued to infringe over and over and over again even after Sanborn filed this action.

ERIS will say there are facts that support its equitable-estoppel narrative.  But on these objections, where the recommendation found summary judgment warranted for ERIS, all evidence must be read, and all facts and inferences drawn, in Sanborn's favor.  The recommendation did not do so among other errors, each of which is sufficient to reject the estoppel finding:

- ***Misapplied equitable-estoppel law.***  By way of example, the recommendation relieved ERIS of its obligation to use "due care" in ensuring it did not infringe Sanborn's copyrights, and the recommendation did not assess the equities (as the case law requires), let alone conclude the equities rendered estoppel available.

- ***Improperly found disputed facts for ERIS and denied inferences for Sanborn.***  By way of example, the recommendation concluded that a November 2013 letter—in which Sanborn advised ERIS to respect Sanborn's copyright—lulled ERIS into a false sense of security because Sanborn did not sue until five years later, despite there being no contemporaneous evidence the letter had *any* effect on ERIS's conduct.

- ***Ignored material facts when applying its analysis.***  By way of example, when considering whether Sanborn lulled ERIS, the recommendation did not address ERIS's years-long concern that ERIS faced a possible copyright suit by Sanborn; and when concluding ERIS relied on Sanborn's failure to act after the November 2013 letter in making business investments, the recommendation did not address the evidence showing ERIS put many of those investments in motion *before* receiving the letter.

- ***Made contradictory findings as to disputed facts.***  By way of example, the recommendation acknowledged a dispute as to whether Sanborn received ERIS's response to the November 2013 letter but termed the dispute "immaterial," then later held against Sanborn its purported failure to respond to ERIS.[3]

---

[3] Report & Recommendation (Mar. 25, 2024) [ECF 341], at 10 n.7, 13.

At worst for Sanborn, the record is replete with material factual disputes on estoppel that require a trial on the merits.  (The evidence, in fact, is sufficient for the Court to dismiss the defense altogether.)  The Court, whose review is *de novo*, Fed. R. Civ. P. 72(b)(3), should reject the recommendation to dismiss Sanborn's complaint and send the copyright and DMCA claims to trial.

## THE CONTEXT FOR SANBORN'S OBJECTIONS

Sanborn owns the most-comprehensive collection of fire-insurance maps in the world (Sanborn Stmt. ¶¶ 225–27; ERIS Stmt. of Facts (Mar. 3, 2023) [ECF 233], ¶¶ 12–13), which it sells to customers in the form of customized reports containing maps and other data.  The maps—which Sanborn's cartographers, draftsmen, surveyors, and other employees meticulously created by selecting, arranging, and illustrating an array of information (Sanborn Stmt. ¶¶ 57, 121–23)—originally were a staple of insurance-industry analyses; now they most commonly are used by organizations, such as lenders and real-estate firms, conducting environmental assessments.  (ERIS Stmt. ¶¶ 7–8, 127–30, 132, 134–36.)  Sanborn has been in business since 1866 through various corporate entities, and the copyrights for the maps it created were and remain the subject of publicly-available registration and renewal records.  (Sanborn Stmt. ¶¶ 1, 130.)

ERIS, which also generates environmental reports including insurance maps and other data, now competes with Sanborn in the United States—unfairly.  When ERIS, a Canadian company, decided to enter the US market in or around 2010, it did not have any historical maps of locations in the United States.  (Sanborn Stmt. ¶ 172, 175.)  Because the painstaking process of creating those maps from scratch (as Sanborn had done for more than a century) was expensive and time consuming, and impossible to replicate because the maps reflect snapshots of history, ERIS chose a different option—infringement.  Beginning in 2010, it obtained copies of Sanborn's maps from Sanborn licensees in the academic market; those licenses precluded commercial use of the maps, a limitation ERIS knew and disregarded.  (Sanborn Stmt. ¶¶ 183, 190–

91, 199, 203.)  ERIS chose this approach because it believed it could circumvent Sanborn's cop-

yrights—which ERIS said it "really need[ed] … to be competitive in the US market."  (Sanborn

Stmt. ¶¶ 175, 202.)  As ERIS's president would recount when discussing the company's entry

into the US market:  ERIS "weighed the risk and decided [it] had enough going for [it] to make it

difficult for [Sanborn] to enforce the copyright."  (Sanborn Stmt. ¶ 233.)

ERIS's need for Sanborn maps grew in tandem with ERIS's business, and ERIS turned to

other surreptitious activities to fill its collection.  In 2013, for example, it used an account for a

non-existent "ERIS College" to download maps from a Sanborn academic licensee (Sanborn

Stmt. ¶ 259), sidestepping commercial-use restrictions.  ("ERIS College" downloads were so ex-

tensive they "clogged" the licensee's servers and shuttered access to the platform.  (Sanborn

Stmt. ¶ 262.))  And in 2017, it began scanning copies of Sanborn maps in libraries.  When librar-

ians told ERIS's employees "the maps are under copyright to [Sanborn] and cannot be copied"

(Sanborn Stmt. ¶ 245), ERIS hired contractors to scan them because it "really [didn't] want" the

libraries "to know ERIS is buying the maps" (Sanborn Stmt. ¶ 246).  It then directed contractors

to inform libraries the scans were for "research purposes," like a non-existent "land use change

project for the city of Boston between the 1950's through 1990's."  (Sanborn Stmt. ¶ 251.)

ERIS incorporated Sanborn's maps into its commercial offerings—site-specific reports

generated at the request of its customers.  (ERIS Stmt. ¶¶ 163, 165, 169 174.)  In doing so, ERIS

at times removed Sanborn's copyright information from the purloined maps, and falsely imposed

conditions on the use of the maps even though it does not own them.  (ERIS Stmt. ¶¶ 26–31, 157,

178, 182.)  Throughout its decade of building a commercial enterprise on the back of Sanborn's

intellectual property, ERIS knew Sanborn had copyrighted its maps and that those copyrights

were in effect.  As early as 2010, for example, ERIS's counsel told ERIS the copyrights on

Sanborn maps published (i) on or after January 1, 1964 were "alive"; and (ii) between 1923 and 1963 were still valid if they were "renewed" (even if renewal was difficult). (Sanborn Stmt. ¶¶ 216, 255.) This advice was not lost on ERIS—as ERIS's emails show, it understood that "depending on the years, [Sanborn] may have some copyright privilege" (Sanborn Stmt. ¶ 219) and that, as a result of ERIS's improper acquisition of Sanborn's maps, "there could be some litigation coming our way" (Sanborn Stmt. ¶ 227). Indeed, ERIS's president reflected in 2017 that "[t]here has always been a degree of risk with the acquisition of [the Sanborn maps]" because "[t]echnically" Sanborn "can come after us," but the company "took a leap of faith that it would be alright." (Sanborn Stmt. ¶ 231.)

This lawsuit followed in March 2019, with Sanborn asserting copyright and DMCA claims. At issue are 6,120 Sanborn works, comprising over 150,000 maps, each at-issue work of which has a certificate of copyright registration or renewal. (Sanborn Stmt. ¶¶ 129–31.) ERIS, for its part, brought counterclaims, including for antitrust violations, some of which the Court previously dismissed without objection, others that remain pending.

After extensive discovery, ERIS moved for summary judgment on its equitable-estoppel defense, Sanborn's standing to bring the copyright claim, and Sanborn's DMCA claim; Sanborn cross moved on ERIS's estoppel and standing defenses. On estoppel, ERIS argued Sanborn lulled it into believing Sanborn would not sue to enforce Sanborn's copyrights, largely based on a November 2013 letter that advised ERIS to respect those copyrights as ERIS entered the US market. ERIS said the fact Sanborn did not follow up on the letter, or file suit until 2019, misled it into believing it faced no liability to Sanborn, and that it organized its business on that belief. ERIS waved away the evidence of its expressed concerns about litigation throughout that period, the advice received from its counsel confirming that a substantial number of maps remain under

copyright, and its knowing decision to use Sanborn's maps to build its business. And ERIS

pointed to no contemporaneous evidence dating between November 2013 and this suit that sug-

gested Sanborn's conduct led ERIS to believe it had *carte blanche* to infringe.

The recommendation nevertheless found no triable issues of fact on each of the equitable-

estoppel elements (although it did not balance the equities as the cases require) and concluded

that Sanborn's complaint should be dismissed. In the alternative, the recommendation found dis-

puted issues on the merits of the copyright and DMCA claims, which would have sent them to

trial but for the conclusion that Sanborn be estopped from proceeding. (Recommendation 2 &

n.2.) ERIS's remaining counterclaims are still pending, and they will be the subject of further

litigation, including future summary-judgment practice. (Hr'g Tr. (Dec. 7, 2022) [ECF 221], at

24; Endorsement of Briefing Schedule (Dec. 22, 2022) [ECF 224].)

## THE REPORT & RECOMMENDATION ERRED IN DISMISSING
## SANBORN'S COMPLAINT ON EQUITABLE-ESTOPPEL GROUNDS

Equitable estoppel is a "drastic remedy," *Fitzpatrick v. Sony–BMG Music Entm't, Inc.*,

2008 WL 84541, at *3 (S.D.N.Y. Jan. 8, 2008) (quotation omitted), to be used "sparingly," *Lom-*

*bardi v. Whitehall XII/Hubert St., LLC*, 2010 WL 742615, at *8 (S.D.N.Y. Mar. 3, 2010) (quota-

tion omitted), and only in "exceptional circumstances," *Ambac Assurance Corp. v. U.S. Bank*

*Nat'l Ass'n*, 632 F. Supp. 3d 517, 547 (S.D.N.Y. 2022) (quotation omitted). To prevail on this

"drastic" defense, ERIS must establish (by a preponderance of the evidence) each of four ele-

ments: (i) Sanborn knew of ERIS's infringing conduct; (ii) ERIS was ignorant of the true facts;

(iii) Sanborn either (a) intended that ERIS rely on its acts or omissions suggesting authorization,

or (b) acted or failed to act in such a manner that ERIS had a right to believe it intended ERIS to

rely on its conduct; and (iv) ERIS detrimentally relied on Sanborn's conduct. *ABKCO Music,*

*Inc. v. Sagan*, 50 F.4th 309, 321 (2d Cir. 2022), *cert. denied*, 144 S. Ct. 77 (2023). Because the

recommendation granted the defense on summary judgment, ERIS's burden was even greater: ERIS had to show no genuine dispute of material fact as to each element, construing all "evidence in the light most favorable to" Sanborn and drawing "all reasonable inferences in its favor." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013).

There is more.  Even if there were no dispute on each of the four estoppel elements, there also had to be a finding that the equities favored ERIS—again, interpreting all evidence and drawing all inferences for Sanborn.  *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773, 775–76 (Fed. Cir. 1995); *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1043 (Fed. Cir. 1992), *abrogated on other grounds by SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 580 U.S. 328 (2017).  The multi-layered factual inquiry equitable estoppel presents for a defendant is why granting the defense "usually" is "inappropriate for summary judgment." *Dunlop-McCullen v. Pascarella*, 2002 WL 31521012, at *15 (S.D.N.Y. Nov. 13, 2002); *see also Dallal v. The New York Times Co.*, 2006 WL 463386, at *1 (2d Cir. Feb. 17, 2006) (reversing summary judgment); *Zuma Press, Inc. v. Getty Images (US), Inc.*, 2019 WL 316001, at *2 (S.D.N.Y. Jan. 24, 2019) (rejecting summary-judgment grant on reconsideration).

This is the "usual[]" case.  Summary judgment for ERIS on equitable estoppel was error.

The recommendation incorrectly found no genuine dispute of material fact on each of three elements—ERIS's ignorance of the true facts; whether Sanborn misled ERIS in acting (or not acting); and whether ERIS relied on that conduct to its detriment[4]—including by misapplying equitable-estoppel law; ignoring material record evidence; and interpreting evidence in ERIS's favor, rejecting competing inferences for Sanborn.  The recommendation then compounded these errors by failing to assess the equities, the absence of which alone is a basis for denying ERIS

---

[4] On summary judgment, Sanborn does not dispute it had knowledge of ERIS's infringement.

summary judgment on estoppel.  On its *de novo* review, the Court should reject summary judgment for ERIS and send Sanborn's copyright and DMCA claims to trial.

## I.   THERE ARE TRIABLE ISSUES ON EQUITABLE ESTOPPEL

### A.   Whether ERIS Was Ignorant of the True Facts Is a Triable Issue.

1.   The recommendation correctly found that for ERIS to establish its ignorance of the true facts, it had to show it was "ignorant of … [Sanborn's] ownership of the asserted copyrights."  (Recommendation 9 (citing *LEGO A/S v. Best-Lock Constr. Toys, Inc.*, 404 F. Supp. 3d 583, 621–22 (D. Conn. 2019)).)  In using this standard, the recommendation adopted the "weight of authority," *Lego*, 404 F. Supp at 621 n.28, and rejected ERIS's theory that ERIS need only show it had no idea Sanborn would file suit to enforce its copyrights (ERIS SJ Br. (Apr. 3, 2023) [ECF 239], at 38–39).  Having relied on *Lego* and deployed the correct legal test, the recommendation should have denied ERIS's motion:  "A copyright notice on the work creates, *at a minimum*, 'a triable issue of fact whether defendants were ignorant of the true facts.'"[5]  *Lego*, 404 F. Supp. 3d at 621–22 (quoting *Pavlica v. Behr*, 397 F. Supp. 2d 519, 527 (S.D.N.Y. 2005)).  The recommendation took "judicial notice of the existence of copyright registrations issued by the Copyright Office" as to the at-issue works (Recommendation 27 n.19), and otherwise found no triable issues of fact with respect to the sufficiency of the copyright notices for the vast majority of those works (Recommendation 36–40).  Consistent authority from across the country (including this Circuit) requires denial of summary judgment on these facts,[6] and the recommendation

---

[5] All emphases are added unless otherwise noted.

[6] *See, e.g.*, *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 102–04 (9th Cir. 1960); *Rand McNally & Co. v. Fleet Mgmt. Sys., Inc.*, 600 F. Supp. 933, 945 (N.D. Ill. 1984); *Lego*, 404 F. Supp. 3d at 621–22; *Lowry's Reps., Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 747 (D. Md. 2003); *Pavlica v. Behr*, 397 F. Supp. 2d 519, 527 (S.D.N.Y. 2005); *Keyfer & Assocs. Inc. v. Brock*, 2010 WL 11505875, at *12 (N.D. Ga. Mar. 30, 2010); *Energy Intel. Grp., Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-*

need not have proceeded further in rejecting ERIS's estoppel defense at this stage.

The recommendation did not discuss *Lego*'s holding regarding the effect of copyright notices. Rather, it found ERIS ignorant because ERIS purportedly did not know the *specific* maps Sanborn "had standing to sue over," as Sanborn, assertedly, was uncertain as to which "copyrights are valid and enforceable." (Recommendation 12, 14.) This is not the law, and the rationale also wrongly relieved ERIS of its duty to "use due care and not fail to inquire as to rights where that would be the prudent course of conduct." *Lego*, 404 F. Supp. 3d at 622 (quoting *Cooley v. Penguin Group (USA), Inc.*, 31 F. Supp. 3d 599, 613 (S.D.N.Y. 2014)).

*First*, on the law, uncertainty about specific copyrights, or even disagreement as to whether at-issue copyrights are valid and enforceable, is not a basis for finding no triable issues on the true-facts element. In *Lego*, for example, the defendant denied the works (mini figures) were copyrightable and had evidence that some figures were missing copyright notices altogether. *Id.* at 622–23. The court nevertheless held that evidence showing copyright notices generally were on the figures created a dispute of fact. *Id.* In *Pavlica*, the court found that a copyright notice on the at-issue work precluded a finding for the defendant on the true-facts element, even though the defendant challenged the plaintiff's copyright ownership. 397 F. Supp. 2d at 525–28. And in *Keyfer*, the defendants, who argued they were joint authors of the at-issue works, could not prevail in establishing their ignorance of the true facts because there were copyright notices on those works. 2010 WL 11505875, at *12, 18. So too here.

More generally, the recommendation's focus on *Sanborn's* supposed uncertainty about which copyrights were valid (in other words, what Sanborn knew) was improper; the true-facts

---

*CIO/CLC*, 2013 WL 4648333, at *12 (W.D. Pa. Aug. 29, 2013); *Oppenheimer v. Scarafile*, 2022 WL 2704875, at *3 (D.S.C. July 12, 2022); *see also Dallal v. The New York Times Co.*, 2006 WL 463386, at *2 (2d Cir. Feb. 17, 2006) (approvingly citing holdings in *Hampton* and *Pavlica*).

element evaluates knowledge of the true facts from the *defendant's* perspective.  *See, e.g.*, *Lego*, 404 F. Supp. 3d at 622 n.28 (citing cases).  Thus, the recommendation's statement that ERIS's knowledge and behavior did not "have any bearing on the 'true facts'" (Recommendation 14) was a legal error rendering the recommendation's true-facts holding unsupportable, given that the legal standard mandates consideration of ERIS's knowledge and behavior.

*Second*, although the recommendation correctly acknowledged ERIS had a due-care requirement (Recommendation 9), it did not make any findings that ERIS had satisfied this requirement—it did not consider the requirement at all, in fact.  (This, too, is sufficient to reject summary judgment.)  Had the recommendation considered the issue, the evidence yields a conclusion that ERIS failed to satisfy its due-care obligation.

Material record evidence establishes that far from using due care, ERIS acted ostrich-like in ignoring the copyright implications of using Sanborn maps:

> We would prefer not to reference copyright, however we want to cover our butts as well.  If we say that the maps cannot be reproduced, we are acknowledging copyright …  Can you please noodle on this and come up with some legal wording that would work for us and that we can have put on all the map requests.

(Sanborn Counterstmt. of Facts (June 8, 2023) [ECF 256], ¶ 183.)  And when it raised its head, ERIS heard that Sanborn owned copyright in the maps.  As ERIS clandestinely acquired Sanborn's maps from third parties over the years, its copyright attorney reminded ERIS that Sanborn held at least some copyrights.  (Sanborn Stmt. ¶¶ 216, 219, 255.)  (It would be no answer to say that this coordination with an attorney shows due care; no one associated with ERIS ensured that each use of a Sanborn map was legal.)  Indeed, ERIS's president remarked in 2017 based on legal advice the company received that "depending on the years, [Sanborn] may have some copyright privilege."  (Sanborn Stmt. ¶ 219.)  None of this knowledge stopped ERIS from building its presence in the US market on the back of Sanborn's copyrighted maps.  ERIS was

certain to reap commercial benefits from infringing Sanborn's copyrights, and it believed it "had

enough going for [it] to make it difficult" for Sanborn to enforce its copyright.  (Sanborn Stmt.

¶¶ 233–34.)  Use of Sanborn's maps, it seems, was a foregone conclusion, infringement or not.

Putting aside that the recommendation made no finding on ERIS's due care, the evidence yields

an inference that ERIS did not, and instead knowingly risked a potential copyright action in the

period before Sanborn sued.

Additional record evidence the recommendation did not address when considering the

true-facts element shows ERIS was not "ignorant of … [Sanborn's] ownership of the asserted

copyrights" (Recommendation 9):

- In December 2010, as ERIS sought to acquire a collection of Sanborn maps, ERIS was warned that "to include the maps in [its reports]," it "would need to receive permission from Sanborn."  (Sanborn Stmt. ¶ 183.)

- In March 2011, ERIS acquired a collection of Sanborn maps from a Sanborn licensee, with the purchase agreement detailing that ERIS's use of the maps would be limited by applicable copyright law.  (Sanborn Stmt. ¶ 203.)

- In 2017, as ERIS surreptitiously collected additional Sanborn maps from libraries, several libraries told ERIS it would need permission from the copyright holder to scan the maps.  (Sanborn Stmt. ¶ 249.)

These facts underscore that ERIS proceeded not ignorant of, but in spite of, knowledge of

Sanborn's copyrights.  This is a reasonable inference to draw for Sanborn; it thus is one the

Court must adopt; and it requires denying summary judgment.

2.     ERIS argued the correct true-facts inquiry is whether it knew Sanborn "believed

ERIS conduct [sic] to be unlawful and would file suit."  (ERIS SJ Br. 39; *see also* ERIS SJ Reply

(Sept. 11, 2023) [ECF 285-3], at 13–14.)  *Lego* found this against the "weight of authority," 404

F. Supp. 3d at 621 n.28, and the recommendation did not adopt it.  (The defendant in *Lego*

sought the same standard, and lost, too.)  Even under ERIS's incorrect standard, however, there

are triable issues regarding ERIS's knowledge.

For example, in March 2013 ERIS told the Federal Trade Commission it was worried about a Sanborn lawsuit because Sanborn "repeatedly and continuously promote[d] to the market that they have … legal copyright." (Sanborn Stmt. ¶ 226.) Several months after that, Sanborn advised ERIS to respect Sanborn's copyrights. (Sanborn Stmt. ¶ 235.) And in the years following, ERIS recognized it continued to face a potential Sanborn suit. As late as 2018, ERIS conceded "[t]here has always been a degree of risk with the acquisition of these maps …. [t]echnically, [Sanborn] can come after us." (Sanborn Stmt. ¶ 231.) That same year, it sought legal advice as to the copyright status of certain Sanborn maps (Sanborn Stmt. ¶ 219), an inquiry it would not have made if it genuinely believed Sanborn intended to abstain from suit.

Other ERIS actions also were inconsistent with a company that believed it had little to fear from Sanborn. As noted, ERIS quietly sought to expand its collection of Sanborn maps by copying them from libraries—efforts for which ERIS, in 2018, did not want to "push[] too hard, just in case [Sanborn] comes back … with a lawsuit." (Sanborn Stmt. ¶ 254.) ERIS would not have acted slyly if it believed (as it asks the Court to assume on summary judgment) that either it was not infringing or it believed it faced no prospect of liability to Sanborn. The evidence supports the conclusion that ERIS always believed a copyright lawsuit from Sanborn was possible, but perhaps unlikely because it (incorrectly) though such a lawsuit would be difficult for Sanborn to win. That is a far cry from being ignorant Sanborn would ever sue and it is insufficient to prevail as a matter of law on the true-facts element, even under ERIS's erroneous standard.

### B.   Whether Sanborn Misled ERIS Is a Triable Issue.

ERIS had to establish no genuine dispute that, based on Sanborn's conduct, ERIS "reasonably infer[red] that [Sanborn] did not intend to enforce its" copyrights. (Recommendation 8–9 (quoting *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 2008 WL 5049744, at *4 (S.D.N.Y.

Nov. 26, 2008), *aff'd*, 605 F.3d 1305 (Fed. Cir. 2010)).)  The evidence does not allow this finding.  As noted, in the near-decade between ERIS's first purchase of Sanborn's maps and this action, ERIS repeatedly expressed concern that it faced a Sanborn suit.  The recommendation did not cite this evidence when considering whether Sanborn misled ERIS, and it establishes triable issues of fact on the element.  Regarding the evidence the recommendation cites to find the opposite—(i) Sanborn's November 2013 letter and (ii) 2014 corporate discussions between the parties—the recommendation ignores case law and finds disputed facts for ERIS.  Neither the letter nor the corporate discussions are a basis to find Sanborn misled ERIS into a false sense of security as a matter of law, rendering summary judgment improper.

1.      Ample record evidence, unaddressed in the recommendation's analysis, shows ERIS's years-long concern that ERIS faced a possible copyright suit by Sanborn:

- **2010:**  When it sought to enter the US market, ERIS "weighed the risk and decided [it] had enough going for [it] to make it difficult for [Sanborn] to enforce copyright" claims against it.  (Sanborn Stmt. ¶ 233.)

- **February 2013:**  ERIS's president worried "there could be some litigation coming [its] way" and acknowledged "the perception in the marketplace is that [Sanborn's maps] are copyrighted and can not [sic] be sold."  (Sanborn Stmt. ¶ 227.)

- **March 2013:**  ERIS told the Federal Trade Commission it "continued to have concerns of potential legal action by" Sanborn.  (Sanborn Stmt. ¶ 226.)  It later speculated that Sanborn might not bring a copyright action because Sanborn is "concerned about monopoly issues."  (Sanborn Stmt. ¶ 225.)

- **2017:**  ERIS's president was "aware" any Sanborn maps "post 1976" are in copyright and that "all [Sanborn] need[s] to do is register to sue."  (Sanborn Stmt. ¶ 228.)  She speculated Sanborn has not "bothered" to take legal action "because proving [copyright infringement] is so onerous."  (Sanborn Stmt. ¶ 229.)

- **2018:**  ERIS recognized it "always" had "a degree of risk with the acquisition of [Sanborn's] maps" that meant Sanborn "[t]echnically" could "come after" ERIS.  (Sanborn Stmt. ¶ 231.)

- **2018:**  As contractors copied Sanborn maps from libraries for ERIS, ERIS fretted they were "taking on a large liability" and could "be sucked in a court battle with"

Sanborn.  (Sanborn Stmt. ¶ 252.)

- **2018:**  Having "weighed the risk" and concluded it had "enough going for [it] to make it difficult for" Sanborn to protect its copyrights in 2010, ERIS decided "to carry on and see what happens."  (Sanborn Stmt. ¶ 233.)

In the nine years between when ERIS first purchased Sanborn's maps for the US market and when Sanborn filed this action, ERIS repeatedly recognized its use of Sanborn's maps presented litigation risk, and decided to go ahead anyway.

It is true that during this period, ERIS at times assessed the risk as "less than negligible" (ERIS Stmt. ¶ 263) or "small" (Sanborn Stmt. ¶ 232).  But there is no contemporaneous evidence suggesting *Sanborn's* conduct drove the assessments.  The Court thus can infer Sanborn did not mislead ERIS into believing Sanborn had no intention to sue; rather, ERIS always knew litigation was a possibility but chose to proceed in the face of risk based on considerations other than Sanborn's conduct.  These facts create triable issues on what ERIS believed regarding Sanborn's intent to enforce its copyrights, even accepting ERIS's risk assessment.  *See Aukerman*, 960 F.2d at 1044; *ThermoLife Int'l, LLC v. Myogenix Corp.*, 2016 WL 4095967, at *5 (S.D. Cal. June 28, 2016); *Cedarapids, Inc. v. CMI Corp.*, 2000 WL 34030837, at *6 (N.D. Iowa Nov. 2, 2000).

2.    The recommendation found that Sanborn misled ERIS because (i) Sanborn "sent a letter threatening to sue ERIS in November 2013 … then failed to follow up on that threat in any form until February 2019" and (ii) the parties' parents had corporate discussions in 2014.  (Recommendation 10–11.)  The recommendation overread the 2013 letter and drew inferences in ERIS's favor, notwithstanding the summary-judgment standard.  Neither the letter nor the corporate discussions warrant finding ERIS was misled as a matter of law.

**The November 2013 letter is not the type that gives rise to misleading conduct.**  As Sanborn learned in 2013 about ERIS's planned expansion in the US market, it wrote ERIS that it

"maintains copyright within its Sanborn Map collection" and that absent its "express written per-

mission, ERIS is not permitted to copy or use any of the Sanborn Maps under copyright."

(Sanborn Stmt. ¶ 237.)  The letter then cautioned that Sanborn takes "all actions it deems appro-

priate, including actions under the US Copyright Laws, to enforce its copyrights and to obtain

damages against anyone who infringes or misappropriates such copyrights."  (Sanborn Stmt. ¶

238.)  The recommendation found this letter an "unfulfilled threat[] to enforce a copyright" con-

stituting "misleading conduct" because Sanborn did not sue until 2019.  (Recommendation 9–

11.)  The letter, however, did not have hallmarks that courts generally find yield such an infer-

ence.  It did not, for example, reflect an "immediate or "vigorous" threat of enforcement, *Hottel

Corp. v. Seaman Corp.*, 833 F.2d 1570, 1574 (Fed. Cir. 1987), identify specific infringed works,

*CAO Lighting, Inc. v. Feit Elec. Co.*, 2020 WL 7786580, at \*3 (C.D. Cal. Oct. 22, 2020) (estop-

pel a "product-specific defense"), or have a "deadline for response," *Hemstreet v. Computer En-

try Sys. Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992); *see also Wafer Shave, Inc. v. Gillette Co.*,

857 F. Supp. 112, 120 (D. Mass. 1993).

The letter contrasts with correspondence courts have found constitute unfulfilled threats

to sue, rendering subsequent silence potentially misleading.  In *Aspex*, for example, there were

multiple communications from the plaintiff, reflecting shifting-sands complaints about what pa-

tents were at issue, coupled with a demand the defendant "immediately confirm" it stopped sell-

ing the infringing product.  2008 WL 5049744, at \*1–2.  Those communications also "warned

that courts could issue an injunction for patent infringement and award attorneys' fees and treble

damages in some circumstances."  *Id.*  The correspondence in *Wafer Shave* "demand[ed]" the de-

fendant "cease and desist from making, using, or selling the [at-issue] product" and promised to

"initiate appropriate action" unless the plaintiff received a response within fourteen days.  857 F.

Supp. at 117.  By contrast, *Aukerman* involved multiple communications, the last of which was the defendant rejecting a settlement offer in which the plaintiff would "waive liability for past infringement" if the defendant "took a license."  960 F.2d at 1043.  But in view of other facts, including that the defendant at least supposed the plaintiff had not sued because the recovery would be *de minimis*, *Aukerman* found a triable issue as to whether the plaintiff misled the defendant.  So too here—coupling the text of the letter with ERIS's subsequent statements about its risk establishes a genuine dispute as to the letter's effect.

ERIS's counsel said he responded to Sanborn's letter, stating that it "fail[ed] to identify a single allegation of copyright infringement" and asking for specific examples.  (ERIS Stmt. ¶ 290.)  The recommendation found a factual dispute as to whether Sanborn received this response (Recommendation 10 n.7), correctly rejecting ERIS's argument that Sanborn be presumed to have received it (ERIS SJ Br. 34 n.20).[7]  And in all events, because Sanborn's letter was not of the type courts find may give rise to misleading conduct, any Sanborn silence was beside the point.  Moreover, in the few circumstances where courts have found silence itself misleading, the parties have been in a legal or fiduciary relationship, or the plaintiff acted in bad faith.  *See Kewazinga Corp. v. Microsoft Corp.*, 558 F. Supp. 3d 90, 108–09 (S.D.N.Y. 2021); *compare, e.g.*, *id.* at 109 (no duty between competitors notwithstanding meetings to discuss infringements), *with DeCarlo v. Archie Comic Publ'ns, Inc.*, 127 F. Supp. 2d 497, 511 (S.D.N.Y. 2001) (duty to speak where there was an ongoing business and contractual relationship).  These circumstances

---

[7] The proposed presumption was unavailable because the facts (including that response's cover sheet discussed an unrelated patent prosecution for a different client (Sanborn Stmt. ¶¶ 241–42)) rebutted it.  After recognizing the factual dispute, the recommendation appeared to conclude Sanborn did receive the response and then relied on its receipt in finding ERIS ignorant of the true facts.  (Recommendation 13 ("When ERIS reached out to [Sanborn] to seek clarification on which copyrights [Sanborn] believed were being infringed, [Sanborn] did not respond.").)

do not describe the relationship between Sanborn and ERIS, and thus even if Sanborn had an opportunity to follow up on its initial letter, not doing so was not misleading conduct.

 ***The 2014 corporate discussions addressed different issues.*** On and off for approximately ten months in 2014, Sanborn's and ERIS's parent companies discussed potential business transactions, including an ERIS license of "other intellectual property" from Sanborn (not copyrighted maps) for use in Canada, and an acquisition through which Sanborn's parent would acquire substantially all of ERIS's assets. (ERIS SJ Br. 34.) Although these discussions did not address ERIS's possible infringement of Sanborn's maps, the recommendation nevertheless observed the "apparent rapprochement" between the parties yielded only one possible inference: that Sanborn "did not intend to sue over its use of Sanborn Maps." (Recommendation 11.) There is no contemporaneous evidence from ERIS this was the case, and it seems a leap. *See B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1425 (Fed. Cir. 1997) (dismissing estoppel defense in circumstance where parties' business interactions concerned products unrelated to possible claim). Sanborn's parent reasonably could have chosen not to raise ERIS's infringement to see if the parties could complete a transaction, particularly where one of the deals under discussion was acquisition of ERIS's assets, which would have mooted any infringement action.

 ERIS had a different take on the letter and corporate discussions. It argued there are no bright-line rules defining what statements are sufficient to mislead and noted that "whether a copyright holder's conduct is misleading is evaluated from the perspective of the alleged infringer." (ERIS SJ Reply 14 (quotation omitted).) But absent from the record is *any* internal ERIS correspondence following the November 2013 letter stating that *anyone* believed Sanborn's subsequent silence meant Sanborn would not sue to protect its intellectual property. ERIS never discussed the letter in the ensuing years. Nor is there internal ERIS correspondence

suggesting the corporate-parent discussions had any bearing on ERIS's belief whether Sanborn would sue.  An appropriate inference from ERIS's silence is that the letter and discussions had no effect on ERIS.  (That inference, too, arises from the fact ERIS's infringement continued after Sanborn filed suit.)  This inference is particularly reasonable given the contemporaneous evidence showing ERIS recognized Sanborn's copyrights and that its conduct created litigation risk. Among that evidence was 2018 advice from the attorney who supposedly responded to the 2013 letter (Sanborn Stmt. ¶ 255) that does not mention the letter or Sanborn's conduct.

The recommendation, to be sure, references a statement in which ERIS mused that Sanborn might be "bluffing" about its copyrights (Recommendation 11), but this predated the November 2013 letter and noted things would be different if Sanborn's counsel reached out to ERIS (ERIS Stmt. ¶¶ 283, 286).  There is nothing similar from ERIS after November 2013. ERIS, for its part, no doubt will say Sanborn referred to the letter as "a shot across the bow," and will deploy its own cases to argue that it was an "enforcement threat" and "'principles of ethics and good faith'" required Sanborn to respond—particularly when Sanborn could have spoken during the subsequent corporate discussions.  (ERIS SJ Reply 15–17 (quoting *Columbia Broad. Sys., Inc. v. Stokely-Van Camp, Inc.*, 522 F.2d 369, 378 (2d Cir. 1975) (applying New York, not federal, law)).)  But this only underscores why summary judgment on the "whether-Sanborn-misled-ERIS" element was unjustified.  Even if one inference from the 2013 letter and Sanborn's subsequent behavior was that Sanborn did not intend to enforce its copyrights, an equally plausible inference (and the most-reasonable one given the dearth of evidence to the contrary) is that the letter was a notice to a competitor entering the market, which ERIS did not subsequently consider when it infringed.  Because the reading the recommendation gave the letter is not "the *only* possible inference from the evidence," adopting it on summary judgment was error.  *Kewazinga*,

558 F. Supp. 3d at 109; *see also Ferring B.V. v. Allergan, Inc.*, 980 F.3d 841, 853 (Fed. Cir. 2020) (vacating summary judgment where correspondence was "subject to interpretation"); *Aukerman*, 960 F.2d at 1044 ("In review of the different inferences which could be drawn from the exchange of correspondence, it is clear that the court drew an unfavorable inference against Aukerman.  That is impermissible on summary judgment.").

      **C.**    **ERIS's Justifiable Reliance Is a Triable Issue.**

      ERIS must show that it actually, reasonably, and justifiably relied on Sanborn's purported misleading conduct to prevail on equitable estoppel.  *ABKCO Music*, 50 F.4th at 321.  But just as there is no contemporaneous evidence that ERIS believed Sanborn's conduct made it unlikely Sanborn would sue, so too there is no contemporaneous evidence that ERIS relied on that (absent) conduct to its detriment.  *See Aukerman*, 960 F.2d at 1042–43 (defendant must show "it substantially relied on the misleading conduct … in connection with taking some action").  ERIS said it made a number of investments it would not have made had Sanborn brought suit within a reasonable time after the November 2013 letter, but the evidence for this is a declaration ERIS created for summary judgment.  (ERIS Stmt. ¶¶ 318–29.)  This is insufficient.  *See Gasser*, 60 F.3d at 776–77; *Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1463 (Fed. Cir. 1990); *Adventure Prod., Inc. v. Simply Smashing, Inc.*, 2007 WL 2775128, at *5 (S.D. Cal. Sep. 20, 2007).

      The recommendation nevertheless concluded, based on the declaration, that "ERIS proceed[ed] with large-scale investments in the US market in part because of its belief that the risk" of a Sanborn infringement action "was negligible."  (Recommendation 14.)  That conclusion was insufficient under the law to find for ERIS at this stage.  A defendant must have "substantially relied" on the plaintiff's conduct, *Aukerman*, 960 F.2d at 1042–43, not "in part."  Beyond this, the facts do not support the recommendation's chronology—expansion was an ERIS business objective, and it made investments to achieve that objective, *before* it received Sanborn's letter.

A March 2013 ERIS report details that the company already had "*invested substantially* in preparation for the US market expansion." (Sanborn Stmt. ¶ 226.) It did so even though, the report noted, "[a] significant concern was and continues to be the copyright claimed by [Sanborn]." (Sanborn Stmt. ¶ 226.) By ERIS's own contemporaneous account, then, its investments had nothing to do with Sanborn's actions. *See Gasser*, 60 F.3d at 775 (reversing summary judgment on estoppel where court failed to require proof of a nexus between investment and delay).

The recommendation noted two other ERIS investments—a "georeferencing" project "stitch[ing] together" Sanborn maps and the purchase of an aerial-photography business (Recommendation 14)—but they only underscore the absence of justifiable reliance. Although ERIS's georeferencing began in 2015, the evidence shows ERIS initially attempted to georeference its entire Sanborn map collection in or around 2013, faced quality control issues, and then revisited the project two years later. (ERIS Stmt. ¶ 193; Sanborn Counterstmt. ¶ 185.) Similarly, the facts show the purchase of the aerial-photography business in 2015 was motivated by ERIS's desire to expand ERIS's existing aerial-photograph offerings. (ERIS Stmt. ¶ 320.)[8]

The evidence shows ERIS invested based on its own plans and not Sanborn's conduct. This forecloses justifiable reliance. *See Gasser*, 60 F.3d at 775; *Hemstreet v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 1294–95 (Fed. Cir. 1992). At the least, this is a reasonable inference—which the Court must draw for Sanborn, and adopt at this stage—that forecloses a finding as a matter of law that ERIS substantially relied on Sanborn's conduct when investing.

Nor can ERIS support the recommendation's finding of no triable issues by arguing that

---

[8] ERIS identified three other investments it allegedly made relying on Sanborn's inaction: integration of a report-writing tool, development of an Xplorer tool, and efforts to fill gaps in the its collection by copying Sanborn maps from libraries. (ERIS Stmt. ¶¶ 323–27.) No record evidence shows ERIS would have refrained from these activities based on Sanborn's conduct. And further, that ERIS's copying from libraries was done secretly rebuts any such inference.

it believed Sanborn would have difficulty prevailing in a copyright suit.  The question is whether ERIS relied on *Sanborn*'s conduct, *see Dallal*, 2006 WL 463386, at \*1, and courts consistently refuse to find justifiable reliance based on a defendant's own beliefs, *see Gasser*, 60 F.3d at 775 ("personal belief that the patent was invalid"); *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1372 (Fed. Cir. 2001) (defendant's "firm belief … product was noninfringing"); *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1557 (Fed. Cir. 1996) (belief patent was invalid).

### D.   The Recommendation's Failure To Consider the Equities Precludes Summary Judgment for ERIS.

Before granting an equitable-estoppel defense, a court must "take into consideration any other evidence and facts respecting the equities of the parties."  *Aukerman*, 960 F.2d at 1043; *accord Ferring*, 980 F.3d at 858; *Gasser*, 60 F.3d at 776.  Although the parties disputed the equities (Sanborn SJ Br. (June 8, 2023) [ECF 254], at 39–40; ERIS SJ Reply 21–22), the recommendation did not address them.  The absence of a finding for ERIS on the equities precludes summary judgment.  *See Ferring*, 980 F.3d at 858 ("[T]he district court abused its discretion in granting summary judgment of equitable estoppel because the court failed to consider all relevant evidence regarding the equities of the parties."); *Gasser*, 60 F.3d at 776.

On the merits, the equities create a triable issue, if not foreclose estoppel entirely.  As a case on which the recommendation relies details, "[a]n otherwise meritorious estoppel defense may be defeated if it is shown that the defendant is guilty of egregious conduct such as copying or willful infringement."  *Aspex*, 2008 WL 5049744, at \*5 (Recommendation 9); *see also A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 1993 WL 379548, at \*5 (N.D. Cal. Sept. 13, 1993) (on remand; "egregious conduct" precluding estoppel where defendant built an infringing product with knowledge of potential infringement and failed to conduct "a reasonable inquiry into the validity of [plaintiff's] patent").  Here, ERIS has admitted to copying Sanborn's maps *verbatim*,

including in its commercial offerings (ERIS Stmt. ¶¶ 163–165, 169, 174–176, 185, 189)—conduct that throws the equities to Sanborn.

ERIS's infringement also was willful, which courts find where a defendant (i) actually was "aware of the infringing activities" or (ii) acted with "reckless disregard for, or willful blindness to," the copyright holder. *Telebrands Corp. v. HM Imp. USA Corp.*, 2012 WL 3930405, at *4 (E.D.N.Y. July 26, 2012) (quoting *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)). The evidence here shows ERIS knowingly or recklessly disregarded Sanborn's copyrights.

In the process of collecting and exploiting copies of Sanborn's maps, ERIS ignored:

- Sanborn's copyright notices. (Sanborn Stmt. ¶¶ 129–31.)

- Warnings from Sanborn's licensees that their collections of Sanborn's maps could not be used commercially without Sanborn's permission. (Sanborn Stmt. ¶¶ 183, 203.)

- Its own counsel, who informed ERIS that, at least some of Sanborn's copyrights were "alive." (Sanborn Stmt. ¶ 216.) (The record is replete with ERIS's communications with its counsel because ERIS waived privilege to defend its willful conduct.)

Even worse, the evidence shows ERIS engaged in deceit, including when it faced resistance from third parties who were unwilling to let it copy Sanborn's maps without Sanborn's permission. It used a fake account for "ERIS College" to obtain Sanborn's maps from Sanborn's academic licensees, who could not share the maps for commercial use. (Sanborn Stmt. ¶ 259.) And when ERIS sought to expand its collection of Sanborn maps by copying them from libraries, it hired contractors to collect scans of the Sanborn maps because it "really [didn't] want" the libraries "to know ERIS is buying the maps." (Sanborn Stmt. ¶ 246.) It also directed the contractors to tell anyone questioning their work the scans were for "research purposes," like a non-existent "land use change project for the city of Boston between the 1950's through 1990's." (Sanborn Stmt. ¶ 251.) Finally, when ERIS used Sanborn's maps in its own products (which it has continued to

do during this action), ERIS at times would remove Sanborn's copyright information from the maps and include its own terms and conditions on the maps suggesting it was their rightful owner.  (ERIS Stmt. ¶¶ 26–31, 157, 178, 182.)  Surreptitiousness belies innocence.

This is precisely the sort of conduct rendering equitable relief unavailable as a matter of law—after all, one "who seeks equity must do equity." *Aukerman*, 960 F.2d at 1038.  ERIS has not done equity, and it continues to act inequitably, infringing throughout this action (indeed, as of 2022—years into this lawsuit—it substantially *increased* its use of Sanborn maps.)[9]  No doubt ERIS will say the equities lie in its favor, but that only underscores the recommendation's error in not considering them at all and confirms there are triable issues on estoppel.

\* \* \* \* \*

The 6,120 copyrighted works at issue in this action are vast, comprising over 150,000 individual Sanborn map sheets, each reflecting an array of environmental and property information for a specific location at a specific point in time.  ERIS initially took and used individual map sheets, as if it tore them from their original books; it later began selling stitched-together map mosaics comprising multiple sheets in the site-specific reports it generates at its customers' requests.  ERIS had only distributed some of the copyrighted maps in its reports when Sanborn brought suit in 2019; it has distributed many, many more since, as its infringement continued unabated (indeed, ratcheted up) once it faced this action.  The recommendation, however, did not consider estoppel on a work-by-work basis, or by individual infringing ERIS report.  *Contra CAO Lighting*, 2020 WL 7786580, at \*3 ("product-specific defense"); *Lautzenhiser Techs., LLC*

---

[9] Sanborn's expert detailed the extent and timing of ERIS's infringement, although briefing concluded before the close of expert discovery and thus Sanborn could not present the full scope of ERIS's willful infringement when arguing the equities.  Sanborn had argued, over ERIS's objection, that summary judgment on estoppel must await the close of expert discovery (Sanborn Ltr. (May 25, 2022) [ECF 191], at 2), and expert evidence will be part of future estoppel arguments.

*v. Sunrise Med. HHG, Inc.*, 752 F. Supp. 2d 988, 1008 (S.D. Ind. 2010) (defense "analyzed with respect to each Defendant, product, and patent at issue"). It did not address how estoppel could bar claims against infringing reports that did not exist at the time of the allegedly misleading conduct (in 2013 and 2014), or when Sanborn filed this action in 2019, under the facts here. *See CAO Lighting*, 2020 WL 7786580, at *3 (rejecting estoppel for infringement claim as to products defendant did not offer at the time of the misleading conduct). Nor did it analyze whether estoppel could cover maps ERIS had not yet distributed as of 2013, 2014, or 2019, but did distribute thereafter. *See id.* These fact-specific issues arising from the recommendation's broad-brush estoppel conclusion and the circumstances of ERIS's (continuing) infringement only underscore why ERIS's estoppel defense must go to trial.

## II.   DISMISSAL OF THE DMCA CLAIM WAS UNWARRANTED

Having concluded ERIS was entitled to judgment on estoppel, the recommendation then held that Sanborn's complaint should be dismissed in its entirety, wiping away the copyright claim, as well as the DMCA claim. It made no independent findings regarding how equitable estoppel applied to the DMCA claim, however. And insofar as the recommendation concluded there were issues of material fact regarding the DMCA's scienter element (Recommendation 41 n.27)—which requires, among other things, an intent to conceal infringement, *see Ward v. Nat'l Geographic Soc.*, 208 F. Supp. 2d 429, 449 (S.D.N.Y. 2002)—that runs contrary to the recommendation's estoppel finding that ERIS was misled into believing it faced no potential Sanborn suit. Irrespective of the decision on estoppel, then, the Court should revive the DMCA claim.

### THE COURT CAN ADDRESS REMAINING ISSUES AT TRIAL

The recommendation correctly found that to the extent equitable estoppel presents triable issues, Sanborn's copyright and DMCA claims should proceed to trial. (Recommendation 2 n.2, 42.) In reaching the latter conclusion, the recommendation identified what it said were several

disputes of fact.  Sanborn takes issue with a number of these identified disputes, including, by way of example, the supposed ambiguity as to what copyrighted maps were transferred through transactions in 1973 and 1996.  (Recommendation 18–27.)  As Sanborn detailed, both the intrinsic and extrinsic evidence of the transaction documents establish that all copyrighted Sanborn maps were sold through those transactions.  (Sanborn SJ Br. at 3–21.)  Thus, when the recommendation suggested that to prevail on its copyright claim Sanborn may have to proffer "an inventory" of the maps physically located at Sanborn's New York facility at the time of the two transactions (Recommendation 23–24, 26–27), it contradicted the documents and the law, *see Design Options, Inc. v. BellePointe, Inc.* 940 F. Supp. 86, 91 (S.D.N.Y. 1996) ("Ownership of a copyright, or any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied." (citing 17 U.S.C. § 202)).

The Court need not correct this contract-interpretation issue now, however.  After all, "denial of a motion for summary judgment is an interlocutory order" and a court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Vornado Realty Tr. v. Marubeni Sustainable Energy, Inc.*, 987 F. Supp. 2d 267, 276 (E.D.N.Y. 2013) (quoting *Nabisco v. Warner–Lambert Co.*, 32 F.Supp.2d 690, 694–95 (S.D.N.Y. 1999)); *accord, e.g.*, *Marsh v. City of New York*, 2022 WL 3576712, at *2 (E.D.N.Y. Aug. 19, 2022); *Kendall v. Cuomo*, 2017 WL 4162338, at *2 (S.D.N.Y. Sept. 19, 2017); *Grimaldi v. Promuto*, 2014 WL 12657039, at *1 (S.D.N.Y. Oct. 17, 2014).  The Court can revisit the recommendation's disputed-facts findings relating to Sanborn's substantive claims on a fuller record and at trial.

## CONCLUSION

The Court should treat this as the usual case and, reviewing the record *de novo*, conclude that summary judgment for ERIS on equitable estoppel is unwarranted, and deny ERIS's motion.

Dated:  April 24, 2024

Respectfully submitted,

BAKER & MCKENZIE LLP

By: /s/  Joshua S. Wolkoff

James S. Blank
Joshua S. Wolkoff
Catherine K. Stillman
452 Fifth Avenue
New York, New York 10018
Tel:  (212) 626-4100
Fax:  (212) 310-1600
James.Blank@bakermckenzie.com
Joshua.Wolkoff@bakermckenzie.com
Catherine.Stillman@bakermckenzie.com

Mark H. Hamer
815 Connecticut Avenue, N.W.
Washington, DC 20006
Tel:  (202) 452-7077
Fax:  (202) 416-7177
Mark.Hamer@bakermckenzie.com

WILLIAMS & CONNOLLY LLP

Amanda M. MacDonald (*pro hac vice*)
C. Bryan Wilson (*pro hac vice*)
David Randall J. Riskin (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Tel:  (202) 434-5000
Fax:  (202) 434-5029
amacdonald@wc.com
cwilson@wc.com
driskin@wc.com

For matters in New York:
650 Fifth Avenue
Suite 1500
New York, New York 10019

*Attorneys for The Sanborn Library LLC and Environmental Data Resources, LLC*